All rise. The Illinois Court of Fifth Division is now in session. The Honorable Justice Raymond W. Mitchell is presiding. Good morning, folks. Please be seated. Okay, so before we begin, I should just say this is the first time our court has convened since the very good news we learned yesterday about the power. And I'm making the announcement so to spare the lawyers having to congratulate Justice Thaler on his ascending to the Supreme Court. And we are, of course, going to miss him, but we're going to take great comfort that when he does reverse this, he will do so gently. So with that, if our clerk could call our case. 1-24-1979, Rosa Fratto v. Illinois Sports Facilities Authority Okay, we've allotted 20 minutes aside with 5 minutes for rebuttal for the opponent. You don't have to reserve time. And if you could keep your voice up because the microphone does not amplify, it only records. And with that, we'll begin. Good morning. May it please the Court. My name is Nicholas DiMaggio, and I represent the plaintiff appellant in this matter, Mrs. Rosa Fratto. The central issue before this honorable court today is whether the defendant owed Mrs. Fratto a duty of care. As noted in her initial brief and argument on appeal, plaintiff appellant's appeal brings to this Court's attention three primary issues in the trial court's decision to grant the defendant's motions for summary judgment. First, whether the trial court erred in its application of the open and obvious doctrine. Second, whether the trial court erred in finding that the distraction exception does not apply. And third, whether the trial court erred in finding that the four-factor duty analysis as set forth in Veruns v. City of Centralia weighed in favor of the defendant's not owing Mrs. Fratto a duty. Here, Mrs. Fratto and her daughter, Mrs. Moncari, both testified that neither Mrs. Fratto nor Mrs. Moncari noticed the mural leg on the day of the incident. And this is clearly corroborated by the video of the incident. And this alone creates a genuine issue of material fact as to whether the mural leg was open and obvious to someone in the plaintiff's position under the same or similar... That sounds like you're suggesting a subjective standard when you say that Mrs. Fratto and her mother did not notice it. I thought the standard was... A standard, but a reasonable person that noticed it. The standard is certainly objective, Your Honor, that's true. But this type of testimony and this type of evidence is exactly the kind of testimony that not only the Second District and Bukalakian, but this Honorable Court in Al-Qaeda has relied upon to find that whether a condition is open and obvious, when there is a dispute as to the physical nature of a condition, such as its visibility to someone in the plaintiff's position, that creates a genuine issue of material fact. This was true in Al-Qaeda when the plaintiff testified that they didn't see the dangerous condition. This was true in Bukalakian when the plaintiff and her friend, the only eyewitness, both testified that neither of them saw the dangerous condition prior to the incident. And this was true in American Standard National Bank versus... I apologize. Your point is that the plaintiff's not seeing it is enough to create an issue of fact as to whether a reasonable person would not see it. Well, it goes to show that a reasonable person wouldn't see it. Generally speaking, these were reasonable people. Exactly. There's no reason to think they're not reasonable people. Precisely, Your Honor. And I guess moving into the open and obvious doctrine, and as it applies in this case, whether a condition is open and obvious is not always or even usually a legal question. The open and obvious doctrine typically applies involving conditions such as fire, height, bodies of water. In these scenarios, the law generally assumes that people who encounter these conditions will take care to avoid the inherent danger in such condition. When there's a dispute, however, such as the visibility of a condition, whether a reasonably person would have discovered it, that is a question of fact for the finder effect. So is there a pattern instruction on that? There is a pattern instruction. I know there's a pattern on distraction. I looked this morning. I didn't see one. How does it work? If it's a fact question and the jury has to decide it, what exactly do you ask the jury to decide? Well, the finder effect is to assign weight and credibility to the testimony. So they are free to believe or disbelieve whether someone, a reasonable person in the plaintiff's position, would have seen the condition had they been in their position. And the video clearly shows that neither Mrs. Fratto nor the daughter, Mrs. Moncari's gaze, ever catches the mural leg prior to Mrs. Fratto stumbling over the mural leg. That seems to get us into a subtractive standard. What about this idea that while the mural legs were white and they're on a concrete floor, which is darker, so a reasonable person would plainly see it? Well, Your Honor, whether a condition is open and obvious is not determined by merely viewing the condition itself, but whether it was difficult to discover because of its size, lack of significant color contrast, or merely the short time that a plaintiff has to discover the dangerous condition. It could be physical characteristics, which the defendants have conflated with the physical nature of the condition in this case. But you cannot look at the condition in the abstract wholly apart from the circumstances in which it existed. And I think directly on point here is an example provided by the Supreme Court in Ward v. Kamar. There the court stated the issue there was a post right outside the entranceway of a Kamar store. And the court stated, while there's nothing inherently dangerous about the post, it's just an ordinary post. The proper question, however, is not whether the post was inherently dangerous, but whether under the facts of this case or a case, it was unreasonably dangerous. The question generally cannot be answered by merely viewing the condition in the abstract wholly apart from the circumstances in which it existed. There may also be – so there may be conditions, though seemingly innocuous, in and of themselves. Well, that's the idea that people coming out of a store would have bags, carrying bags, and their vision may be obstructed by these bags. That was the specific circumstance in that case. But then there's specific circumstances in al-Qaeda where the curved abutment between a parking lot and the entranceway was not painted, not quite painted yet. So whether it was difficult to discover because of its visibility, that created a question of fact. In Bukaklian, there is a raised portion of a floor mat. Whether that was difficult to discover because of its lack of significant color contrast, or merely the short time, like Mrs. Fahdokir, had to discover the condition in the two or three steps that she takes after – and encounters the condition. It causes – Was that argument foreclosed by her own testimony that she wasn't distracted? Moving – we've talked about the distraction exception. And, Your Honor, Diver v. Bauer Brothers Construction Company, the Supreme Court, dealt with the same issue as to a plaintiff who testified that they were not distracted. And they decided that this was a factor for the jury to consider. The defendant there pointed out that the plaintiff stated he was not distracted when he entered a bathroom. However, the plaintiff knew that materials had been pitched off a balcony in that case, so he was looking up and not down at the ruts that caused him to fall. And based off the activities going on on the construction site, namely, things being thrown off a balcony, that required his attention to be focused up. But he wasn't injured when he was walking into the port-a-potty. He was injured, which is when he said he wasn't distracted. He was injured when he was walking out of the port-a-potty, and he was distracted because he was afraid that construction debris might hit him in the head. Right. So he looked up. And there was no evidence that there was materials being thrown off the balcony at that point. Just like here, when the defendants placed an obstruction in their walkway in a living – something that Jonathan Bass was the senior – Living, breathing, active. Yes, thank you. Living, breathing, active area. Whether Mrs. Frotto was distracted because she was merely exercising care for her own safety, that's something that's reasonably foreseeable to the defendants. Now, I don't want to get the issues conflated here. The distraction exception only comes into play if this court first finds that the mural leg was open and obvious. Open and obvious implicates the first two factors of the duty analysis. The four factors are foreseeability, likelihood of harm, magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendants. Here, the open and obvious distraction exception does not apply. It was not open and obvious under the circumstances. But you're saying even if it was, the distraction exception would apply. Even if it was, the distraction exception would apply. So I just want to make sure that we're keeping those things separate, because I do not think that this court should find that the mural leg was open and obvious as it existed. So on the open and obvious issue, you indicate that time is a factor, how much time you've had to discover the unreasonably dangerous condition. I'm trying to picture this in my mind, but thinking about Guaranteed Great Field and the concourse level, it's a curved, essentially tunnel. Correct. And it's not a straight tunnel, so you might not know what's coming around the bend. Is there any evidence in the record about that? About the time that she had to discover it? Well, the video clearly speaks for itself. She's talking to her daughter, who has to draw her attention to the mural itself. And the fact that she's talking to her mother, that's a self-created distraction. It's not a distraction created by the defendant. Well, the courts seem to say otherwise. Plaintiff cites in their reply brief—a moment, Your Honor, I apologize. Okay. Plaintiff cites in their reply brief Crockchow v. El Paso Golf Club and Sullivan-Coughlin v. Palos Country Club. Now, I want to start with saying I recognize that the nature of the harm in these cases is distinct from the nature of the harm here, namely getting hit by a golf ball versus tripping over a tripping hazard. What's important here is that the nature of the activities in the area has an impact on the foreseeability of harm to the defendants. In those cases, in Crockchow, the court found that it was reasonably foreseeable to the defendants that patrons of the defendant's bar and dining room would be socializing with other persons. And it's very likely, the court found there, that patrons could be distracted by a conversation from other patrons. In Bruns, which I think is what you're alluding to, a self-created distraction, the plaintiff didn't testify that they were distracted by anything. They would simply say that they were looking forward at the doors of the clinic that had no relation to the defendant's city. And I think it's important to note, as this honorable court noted in Foy v. Village of LaGrange, that sidewalk deviations are common and can easily be anticipated by the average pedestrian. What's not common is in an area that Mrs. Moncari and Mrs. Fratto have traversed on numerous occasions, this is the entranceway that they take when they show up to work every time they show up to Guaranteed Rate Field. They are accustomed to there not being obstructions. And they're also accustomed to this being a living, breathing activity. So they become almost automatic as they're walking down that service corridor. They know the layout. They know the terrain. They know the route. They almost do it with their eyes closed is what you're saying. But they didn't do it with their eyes closed. I'm not suggesting they did, but let's talk about the mural. The mural. Is there any evidence in the record about how it was displayed on the concourse level of Guaranteed Rate Field? I looked, and it seemed very unclear to me. I would be shocked if it was displayed with those legs sticking out. I would be shocked, too, Your Honor. This was discussed in the deposition testimony of Jonathan Vasquez, and how it was actually displayed was never flushed out in the record, unfortunately. But we do know how it was displayed in the service tunnel when Mrs. Fratto fell. And the way it was displayed, there was nothing guarding those legs. Neither Mrs. Fratto or Mrs. Moncari noticed them. Now moving a little bit to the final two factors, magnitude of the burden, consequences of placing that burden on the defendant. In war, the court noted, where a simple warning would serve to remove the invisible dangerousness of a condition. Simply putting a stretch or a wet floor sign, things that the defendants had readily available to them. That would serve to remove the danger, and the consequences are minimal when that happens. I'm sorry, the magnitude of the burden is minimal. Let's talk more about the distraction, though. You focus on the abrado mural itself. So walk me through how that's a distraction that you get around the open and obvious defense. Well, again, plaintiff's position is that the mural leg was not open and obvious. Assuming you know that it was, I think analysis of a few of the cases cited in Bruns will be helpful here. So in Rex Road versus City of Springfield, the plaintiff was distracted by a task he was directed to perform, retrieving a helmet. This was a student that was helping out with the high school football team. Was told to go retrieve a helmet. Goes to retrieve the helmet. When he goes to return, the route that he took was now blocked off, so he's forced to use another route. I guess my question is, why is the mural distracting? The mural is not necessarily distracting. That's your argument, isn't it? Assuming the unreasonably dangerous condition is open and obvious, we're talking about the legs here. Right. Your argument is that the defendant created a situation. They created a distraction that made it so that a person that's walking by wouldn't notice the legs. So what I want you to explain to me is why is that mural a distraction? It's not necessarily that the mural is distracting. What Mrs. Prado testified to is that, quote, I walk back to the office, I don't see that piece of wood there, and I trip and I fall. Another quote. I walk, I talk to my daughter. She walks over to the mural. She's looking at the mural, right? She's not looking at the mural. She's posing for a picture. Isn't that the purpose of the mural? That's the activity that the mural is doing. So that would be a distraction. That itself could be a distraction, but also the task of returning her ID badge. She said that her attention was focused on her employer's office at the end of the hall. Not only that, she testified that she was talking to her daughter. And as we saw in Pratchett and Sullivan-Coughlin, a conversation based on the activities in the area is something that could be foreseeable to a defendant and should have been foreseeable when the defendants placed a tripping hazard in their living, breathing, active area. But the defendants, I think Justice Taylor's point may be that the defendants also placed this mural that people would pose in front of in the middle of this route that they're taking. So instead of just concentrating on getting through this tunnel, they're distracted by stopping to take a photograph. And that was very much on the defendants. Is that not fair to place that as a distraction that they created in the tunnel? Absolutely. And that's what this mural invites. It invites people to take pictures. And it was created as part of the public relations. It's a fan experience, isn't it? It is a fan experience. And Ms. Frato and Ms. Moncari aren't just fans of the White Sox. Ms. Moncari has worked there for 17 years and Ms. Frato has worked there for 29 years. They are proud to work at the White Sox facility. So this is something that, like the fans who stopped to take a picture with… Let me ask you this. I understand that the Abreu mural was stacked up against other murals behind it. Is that right? That is right. Do we know how many? I believe there were two. I can't say for certain how many there were. And I think the record shows that the two-by-four legs that served as a base for the Abreu mural sticked out close to the center of the tunnel. Almost halfway. So the tunnel was about 50 feet wide. 25 feet wide, sorry. And the leg of the mural was situated in such a way that it protruded nearly halfway into the egress of the service tunnel. And Ms. Frato was there at the direction of the defendants. They knew that seasonal employees would be returning their ID badges at this time of year. They knew that the mural invited such activity. That's why it was sold at auction. I'd like to move on. The defense says that if we impose a duty here that they would be required to guard against every possible dangerous situation which would be untenable and shouldn't be recognized under law. What's your response to that? Well, this does not impose upon the defendants the unreasonable burden of guarding against every foreseeable injury. You know, the defendants have suggested in this proceeding that if they were to be found liable here, they would be found liable for, sorry, right. So this is not a situation, as the defendants have suggested, as you're alluding to, Your Honor, where a patron fell up the stairs or ran into a door, a counter, a wall, a pole, a food cart, or another patron. This is the defendants having a mural whose purpose is to invite people to come take pictures of it with tripping hazards on either side of it that they place into the egress of their service tunnel and they do nothing. Plaintiff's expert, Mr. Scott Leopold, opined as to what it would cost to guard against this injury. Something as simple as a floor sign, where it would cost them nothing. Storing the mural in another facility, which the White Sox had, in the stadium, in Guaranteed Red Field, there's other warehouses where they could have stored this mural. The magnitude of the burden of guarding against the injury is very slight. And the consequence is they owe a duty to their patrons who come to Guaranteed Red Field to not encumber their walkways with tripping hazards. The situations that the defendants have suggested are something where someone is just simply not paying attention at all to where they're going. Here, Mrs. Fratto, she's fixated with her attention down the tunnel, looking where she's going to her employer's office, has no reason to expect there to be obstruction in her path of travel. So as she goes, in the short amount of time that she has to, one, recognize this mural, and two, proceed on her path toward her employer's office at the end of the hallway, the fact of the matter is a reasonable person in her position would not have occasion to properly recognize this tripping hazard. So, moving back to Scott Leopold's opinion as to what it would cost the defendants to guard against the injury, they could have barricaded the mural for less than $50. They could have moved the mural itself for less than $30 by paying... If the mural was facing the wall so you couldn't see it, does that change the... does that remove the distraction? That removes the... yes, it removes the distraction and it removes the invitation for people to stop and take pictures with it. There would be no reason to stop and pose in front of the mural and then have to encounter the lights. There would be no obstruction in the egress of the tunnel. And that's part of the reason why this is so foreseeable. They place a mural whose purpose is to take pictures with, to colorize, facing outward, to invite people like Mrs. Friar to take pictures with the mural, and then they do nothing to one of the mural legs. Moving... sorry. But part of your argument necessarily includes the assumption that given the scale of this mural, that it's going to draw your attention, be straight ahead and perhaps up, depending on your height, rather than down. Is that right? Because if you're looking down, she may have noticed the legs. Well, requiring invitees to constantly look downward to discover tripping hazards is an unreasonably burdensome standard that courts have rejected in this state. People... invitees are not required to constantly look downward to avoid tripping hazards. Especially when they've walked down this egress numerous times like we've discussed earlier, and every time that they've walked down this surface tunnel, there's been no obstructions that they've had to encounter. So to then place this mural in such a way where the legs protrude nearly halfway into the egress and do nothing to warn their invitees of the dangerous condition, whether in fact that leg served as adequate notice of its presence, or whether more was required upon the defendants to satisfy their duty, is a question for the finder of fact. This is not for the trial court as a matter of law. And I want to talk a moment further about some of the cases that the defendants have cited, Balog and Willfall. In Balog, this Honorable Court noted that the plaintiff had testified that construction in the area had been going on for six months, and that the plaintiff had observed warning signs that construction was ongoing and there may be tripping hazards. Not only that, on the day of the incident, the plaintiff in Balog had successfully navigated almost exactly the same gap on one side of the street. So this court found that they had foreclosed the suggestion that the gap that she ended up tripping on, on the other side of the street, would require additional precautions on behalf of the defendant. And now, obviously, in Willfall, the plaintiff there testified that he had walked across the ruts on a worksite on numerous occasions, knew that the tops of the ruts were unstable, was looking at the ruts to determine his next step, and was familiar with how to avoid the ruts. And then the second district court found that the ruts were open and obvious as a matter of law because a reasonable person in the plaintiff's position who was familiar with the ruts, who was looking at the ruts and knew that the top of the ruts were unstable, would realize that walking across the ruts on the site would present the danger of the rut collapsing. Here, Mrs. Moncari and Mrs. Brado both testified that they had never seen a mural or outfield wall padding, which was also stored in the surface tunnel. They had never seen those items there on any prior occasion that they were in the surface tunnel. That goes to the foreseeability. When you have a clear and free egress every time that they show up to work, and then this time that they show up there is a mural that invites you to come take pictures with it, and the legs of that mural are unguarded, it becomes foreseeable to the defendant that someone may trip on this while they're proceeding toward their employer's office to return their ID badge, while they're having a conversation with another employee in the surface tunnel, or while they're merely exercising ordinary care for their own safety as they proceed through the defendant's surface tunnel. I think you're down to your final minute. Okay, and with that, I would just like to say the four factors here all went in favor of imposing a duty. By placing this mural, it's foreseeable that somebody would stop and take a picture, and then trip over the unguarded legs. But likely the problem is satisfied because Mrs. Brado's injuries, namely a broken hip, are the kind likely to occur as a result of tripping over the mural leg. As we discussed, the magnitude of the burden of guarding against the injury is slight because all the defendant had to do was either place the mural elsewhere, put a wet floor sign, or some kind of demarcation drawing invitees' attentions to the unobstructed mural leg. And the consequences of placing that burden on the defendants here are minimal because they owe a duty to people who they invite to their premises to not obstruct the egress of their walkways in such a way that they pose unreasonably dangerous tripping hazards to invitees such as Mrs. Brado. Okay, very good. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Catherine Wyler, and I represent the Illinois Sports Facility Authority, the Chicago White Sox Limited, and CWS Maintenance Company in this appeal. Justice Mitchell, I appreciated your invitation at the start, but Justice Taylor, I would be remiss if I didn't congratulate you. He's just one vote here. I do consider that that may be poor planning, but nonetheless, congratulations, Your Honor. The Court should affirm the order granting summary judgment in favor of the defendants. The defendants owed Mrs. Brado no duty in this case. As a matter of law, the support legs beneath the mural of Jose Abreu were in open and obvious condition, and the distraction exception does not apply in this case. I'd love to start, Justice Mitchell, with something that you were asking about, and that was specifically for, and you too, Justice Taylor, for an explanation of how the mural was not a distraction, and that's an important question for one specific reason, because there has never been a claim that the mural was the distraction in this case, and that is one of the reasons that the trial court ruled the way it did. This is on page 640 of the record. It's from the hearing on the motion for summary judgment. Judge Otto specified, quote, if Ms. Brado had testified that she was distracted by the mural and the opposing wall or something else that the defendants might have reason to foresee that she might have been distracted by, it would be a different set of facts, and the outcome may well be different. That's not the set of facts in this case. That was undisputed that the mural was not the alleged distraction in this case, simply because her testimony was I wasn't distracted. The video, which we all can see, has her walking down and then suddenly, or not suddenly, but then going off track, coming up to the mural, changing. We can see her actions regardless of whether she would describe herself as distracted. Are you saying we can't pay any attention to that and we can't find a distraction regardless of her testimony? I'm certainly not saying that the court can't pay attention to that. Absolutely not. What I'm saying, and I think it is, the court is certainly correct, that it need not rely solely and exclusively on Ms. Brado's one sentence saying, I wasn't distracted. That's not the only thing, though, that Judge Otto discussed in his ruling in terms of evidence of distraction. Judge Otto relied on a number of things, including the video, and explained that based on his viewing of the video, it was not the mural that served as a distraction. Ms. Brado's daughter encouraged her to stand in a specific spot for a photo. She did, and she wasn't paying attention then as she moved beyond that spot to the area around her. That was the fundamental distraction problem in this case. There wasn't a distraction that was created by the defendants. The distraction was self-created. To your point, Justice Mikva, when one is watching the video, you can see that what Ms. Brado is doing is talking to her daughter. She's looking at her daughter, and she's talking to her daughter. That is a self-created distraction. And Illinois courts have been very plain that in that specific type of situation, a self-created distraction does not constitute something that is an exception to the open and obvious rule. All of this happens very quickly. My question is, why isn't this a jury issue or a fact-finder issue? Let's assume that Ms. Brado talking to her daughter is a self-created distraction. Once they come upon the mural, looking at the video, and just sort of common sense when you see a piece of, call it art, of scale like this mural, it's going to draw the viewer's attention. That's what it's intended to do. I was thinking about an analogy this morning of some large pieces of art that I had the pleasure of seeing, and what came to mind was water lilies. In Paris, there's a museum that's like an entire wall. An entire wall. You're not looking down. You're sort of looking. It just sucks you in, right? And the very purpose of it is to draw in patrons to get your picture with this person. Why isn't this a question that the jury should decide? You can argue, certainly, that if she was talking to her mom, she created a distraction. They'll argue, well, the mural drew her in, kept her from looking at the ground. It sounds like a jury question. So a multiple part answer to that, Your Honor, and I do want to give a very direct answer, but first I think it's important to pull back a little bit from the scene that the court is painting for all of us, no pun intended. One picture is the Art Institute, for example. We're standing in front of the Grand Chateau. There's a bench near the Grand Chateau. What Ms. Frommel was describing would be more analogous to tripping on the bench, so it would be as if a security guard tripped over the bench that was in front of her. That's a painting. She wasn't drawn into the mural. She said that specifically, and you can see that in the video as well. Now, to your more specific question about why isn't this a fact issue, why shouldn't the jury decide that, that's because the physical condition that we're talking about, and that's why I prefaced this with a description of it's more like the bench than the art, the physical description is not in dispute, and that's what Bruns specified. This is Paragraph 18 of Bruns, 2014 Ill 116998, where there is no dispute about the physical nature of a condition because the court has objective evidence of the physical nature of the condition. Distraction can be decided as a matter of law. Here there's not a dispute about the physical nature of the condition because the court has objective evidence. That's what the video is. That's what the film is. And Justice Smith, you asked a question earlier. Well, but that goes to the open and obvious nature of the unreasonably dangerous condition. That's true. Does it go to the, it doesn't answer the question about distraction. About distraction. A distraction, also Bruns, the discussion in Bruns about distraction is Paragraph 22. There must be evidence from which a court can infer that the plaintiff was actually distracted, and the mere fact of looking elsewhere does not constitute a distraction. That's what we're dealing with here. In addition, and this is what I was saying a moment ago, a distraction cannot be self-created. This is Paragraph 31 of Bruns. It's also in the restatement, Section 343A, Comment E. There is no liability, for example, this is an example from the restatement, of a customer encountering a plate glass door where the customer is preoccupied with her own thoughts. Now this goes back, again, to your example, Justice Taylor, which I think is really helpful. There's not an allegation of a distraction created by the mural. There's not an allegation that the plaintiff was drawn into the mural. There's not an allegation that she was somehow taken in by this piece of art. The allegation is that she didn't notice the legs of the mural. And in this case, we have... But isn't that just another way of, I mean, if you look at the videos, as she's walking towards it, it appears that she's looking at the mural itself, which might explain her testimony that she didn't notice the legs. She says she is speaking with her daughter. And the distraction, that distraction, cannot be solely within the plaintiff's own creation. Now the court asked another question. Justice Taylor, you were asking about the geography of the tunnel and the curve of the tunnel and if you could see the legs of the mural as you're working your way down the tunnel. And I readily concede you cannot see the full course of Ms. Fato's walk from the video. I'm not trying to suggest otherwise. But Ms. Fato did testify that if she had not, as her daughter suggested, posed for a photograph, had she not walked over to the mural and stood there and posed for the photograph, she never would have encountered the wooden legs of the photograph. And that is a problem in that the legs would have been readily apparent and not problematic for anyone in that tunnel unless and until there was a self-created decision. But the defendants want passersby to stop and get a picture of themselves in front of the mural, don't they? Potentially. Potentially, they do. If the circumstances are such that that's appropriate. If it's on the concourse. If it's there for patrons of the ballpark. Are you saying that it's not reasonably foreseeable, thank you, that employees and others that use the service tunnel wouldn't stop? No. It makes them any different than the regular patron. For starters, they're not regular patrons. They're employees. What I am saying, Your Honor, is not that there could never be a situation in which an employee would want a photograph taken somewhere in the ballpark. I'm certainly not suggesting that. What I'm saying is that the situation is certainly different, and this Court has the opportunity to consider those circumstances as a matter of law in this particular situation. You mentioned that the mural was displayed on the concourse. Do you know how it was displayed on the concourse? The record does not speak to that, Your Honor. It only says that it was displayed there, but not how. There is additional guidance from bronze on this concept of distraction, and when doing exactly what the Court is asking about, when approaching something or encountering an obstruction constitutes a distraction or not. And it's an important distinction. Bronze acknowledges that in Illinois law there is not a specific definition of distraction, which I think is part of why it becomes a struggle to articulate it. There is not a specific definition given. It's not, though, about—bronze gives us guidance that it's not about whether a plaintiff was looking somewhere else, but why the plaintiff was looking somewhere else. Bronze uses existing cases to provide general observations in that context about what is and what is not a distraction. So if you look at cases such as Ward, in Ward a distraction applies because the defendants should have anticipated that a customer would be carrying a large item out of the store. In Divert, the construction site, Justice Taylor, you were asking about that. The Court found that if you would anticipate that someone exiting a building, a port-a-potty, whatever, and having construction debris being thrown in his or her general direction, that would constitute a distraction and cause that person to look in the direction of something other than the area that he was exiting. American National Bank, a billboard painter is electrocuted. The distraction exception applies because he can't look down at his feet on a narrow walk rail at the same time as looking up at a powered rail above. Rex Road, a student is distracted by focusing on getting back to the football field quickly to provide a helmet to a player. In Bullitt, this is the Walgreens case, a woman is hit by a cleaning machine because she's shopping. She's distracted by the shopping. There's focus on either another hazard or there is focus on another task at hand. It's one of those two things. And that's important, so I'm going to say that again. It is either if the individual is focused on another hazard or if the individual is focusing on another task at hand. And the problem in this case is that Misprato couldn't get past that point. There's no evidence that Misprato was focusing on another hazard. She says she wasn't. She was talking to her daughter. And there's no evidence that she was focusing on another task at hand that required her attention. That's why it was a task at hand, was it not, to go stand in front of the picture and then get back into her progression to the office. And that was a task. That was a task very much put in place by the defendant's actions of putting that mural right in the middle of this somewhat narrow hallway. Misprato decided to stand near the mural. She made that decision. And there was nothing distracting her as she left that area. That's the distinction that the courts have drawn. That's what is meant by focusing on another hazard or another task at hand that requires attention. That's the distinction here between Misprato moving away from the mural. So that would be analogous to indictment. But she would not have had to move away from the mural if she hadn't moved to the mural. And it was very much because of what the defendants had done that she moved to the mural. I mean, it's all part of one action on her part. Yes, I agree that the mural could not have been specifically calling her attention as she moved away from it, but she never would have been there. She was there because her daughter recommended that she pose for a photograph. Yes, but I mean, a photograph in front of the mural that the defendants put there. That's correct. But Misprato did not testify that she was distracted by the mural. I understand she didn't give the testimony. Probably her lawyer's wishes she had given, but we can see the mural. That's correct. We can see the video. And the video, I would submit, suggests that you cannot see the mural in the video. And Misprato does not look at the mural when she is walking over. She stands where her daughter tells her to stand. She poses for a picture. She does. That's absolutely correct. That's absolutely correct. Yes, she does. Absolutely. She testifies that she was not looking at the mural. She testifies about that specifically. Wait, so are you saying that Misprato, as she walks towards the mural to pose, she doesn't look at the mural? I don't believe she does from the video. Would you base that on her testimony or on the video? Both. On both. She testifies she was not looking at the mural. She specifies that in her testimony. And in the video, she simply walks and poses where her daughter tells her to stand. So if she's not looking at the mural and she says she didn't notice the legs, where is she looking? Her daughter. She's looking at her daughter. No, but she's walking away from her daughter. She is. Right? So she must be looking ahead of herself, right? Presumably at the mural. I mean, look at a reasonable inference. The word inference was used earlier today. That's one inference. Maybe you can argue that the video shows her looking down. So she did see it. I don't know. I guess I just am having a difficult time understanding what she was looking at if she was not looking at the mural and she wasn't looking at the legs. So just so that we're all clear as a level set, we're talking about multiple actions. So I want to make sure that we're talking about the same thing. I'm talking about as her daughter stops and says, hey, do you want to get a picture? And then she starts walking. And she appears to be, from the video, pretty much right in front of the mural as she walks straight in between the legs. She does. That's absolutely correct. Her daughter appears to say, I'm sorry, I don't mean to suggest you didn't hear this. I want to be clear about that. Her daughter suggests that she pose. She walks over to pose. Ms. Fratto does not testify that she's there absorbed in the mural. She poses where her daughter tells her to pose. So you're saying that she didn't testify that she was distracted by the mural. There was no testimony about whether she was distracted by the mural. She does not testify that she is distracted by the mural. Does she testify that she wasn't looking at the mural, though? That, I believe she says that, but I would have to double check the transcript to make sure she says those words specifically. That conversation just sounds terribly fact-y. And we're trying to get a case out on summary judgment. It does. And the reason it's terribly fact-y is because we're talking about what is a self-created distraction. And the court does not need to concern itself with the context of a self-created distraction. I'm starting to wonder, why is it a self-created distraction? It seems like a distraction that was created by the defendants. I mean, the very purpose of the mural was to come take a picture with me. And, you know, so I understand the argument about chatting with the daughter. That was self-created. I get that. But I mean, I don't think that that immunizes everything afterward, does it? So to be clear, because I think the construct of the rubric, if the court will, of how this particular area of law functions is important. So we're talking about there is an open and obvious condition. You say that's not a fact question because the physical nature is not discreet. That's correct. And the court is able to make that determination because the court has material in front of it that it objectively can view. It's an objective question. Staying there for a second, can you respond to your opposing counsel's statement that the fact that the two women both said, we did not see the legs, creates in and of itself creates fact question as to whether it was open or not? It does not for exactly the reason Justice Taylor said. It's an objective standard. It's not a subjective standard. So if the two did not see the legs of the mural, of course. But they are presumably reasonable people. They are. And the court is as well. And there is objective evidence that the court can use to make a determination about what a reasonable person would have encountered as a matter of law. So that's the first piece of this. And that's the open and obvious question. Is there an open and obvious condition? Assuming that the court says, yes, we find that this is open and obvious. Then we move to the question. Or it should be. That as a matter of law, this is an open and obvious condition. Then the court moves to the question of whether distraction applies. And the reason I wanted to go back and set that rubric is because as we are working our way through the question of distraction, it's important to remember, okay, that indicates that to have this discussion about distraction indicates that there is a determination that the hazard is open and obvious. It's important to get that. Exactly.  You don't even get the open and obvious. At least there's an unreasonably dangerous condition, which you necessarily must concede because you argue open and obvious. And before we move on, and I am almost done. I recognize my time is almost done. I do want to apologize to the court for a mistake that I made in my brief, and it was in error. There are two times in the brief, pages 13 and 14, in our response that it says unreasonably dangerous. It should have said potentially dangerous. That is absolutely my error, and I apologize to the court for that. So that would be a factual question, too, if we were to reverse. All of this would be a factual question. That's right. But the court should not reverse because, as has been found, we are not saying dangerous. Yes, understood, understood. I just wanted to make sure that that error is explained to the court, and I apologize again. But to be clear, these are objective findings, and that is what makes this type of analysis unusual in Illinois law. There has repeatedly been a determination from the Supreme Court on down that this type of analysis can happen as a matter of law on a motion for summary judgment appropriately. That's what the trial court did here. It was very deliberate. It considered these issues very carefully, asking for additional briefing to make sure that it was accurately looking at this question. It made the determination that as a matter of fact, there could be – I'm sorry, that as a matter of law, there was not a dispute that should go to the jury, that the legs were open and obvious, and that there is not a distraction at issue here. And this court should affirm that. I don't think you were a trial counsel in the case, but I'm just curious, a curiosity. The case was in a commercial calendar as opposed to motions, right? Is that correct? I believe that's correct. I don't know why, Your Honor. I don't know, and I believe it was initially filed as a negligence action, so I don't know why it would have been assigned that way. Right. If there are any other questions. Thank you, Your Honors. Counsel, whenever you're ready. Thank you, Your Honor. So the bottom line here is, where divergent inferences can be drawn, summary judgment is inappropriate. The purpose of summary judgment is not to try and issue a fact, but determine whether one exists. Moreover, the focus, the scope of the defendant's duty is not defined. So let me ask you, Ms. Weiler says that there's no allegation that your client was distracted by the mural and that there is no evidence or testimony by her that she was looking at the mural as she approached it and then turned around to pose for the picture. What's your response to that? Well, first and foremost, Your Honor, we believe the video speaks for itself. The jury is free to decide after looking at the video whether, in fact, Mrs. Fratto was or was not distracted. And to that point, she did provide testimony to the contrary, while the defendants want to point to the one line in her testimony, in her 83-page deposition, that she said she was not distracted. She also provided, as I discussed earlier, that, I quote, I trip and I fall. Another quote. I walk, I talk to my daughter, I don't see the piece of wood at all, and she trips and falls. So going through the cases that – taking those statements and going through the cases that counsel here – Was there testimony one way or the other from her about what she was looking at as she was approaching the mural to turn around for the picture? Just merely that she was talking to her daughter. And like we saw in Fratto. So it doesn't sound like there's testimony one way or the other on that question. Exactly. Not testimony one way or the other, which leaves room for divergent inferences to be drawn, making summary judgment inappropriate, because these questions of fact should be determined by the jury. In Rex Road, the plaintiff was distracted by the task he was directed to perform by the defendants, just like Mrs. Fratto here was distracted by looking at her employer's office. Further, like we saw in Crotchow and Sullivan-Coughlin, a conversation based on the nature, the area of the injury can be a foreseeable distraction to a defendant, and that's what we had. Let me ask you this. Yes. Mrs. Mikva asked a question, Ms. Weiler. And I'd like to hear your response, that even if Mrs. Fratto was distracted by the mural so that she wasn't looking at the leg as she approached it, after she had her picture taken, was walking away from the mural with her back to the mural so that she's not distracted at that point, what's your response to the distraction? In other words, the distraction exception no longer applies as she's walking away from the mural. Well, as we can see from the video, it's not just the José Abreu mural itself with the legs protruding into the walkway, but also across from her. There's another permanent mural on the wall across from the José Abreu mural, drawing her attention there. So whether it's the José Abreu mural itself, whether it's the conversation with her daughter, whether it's her attention That's another mural of a ball player you're saying that is intended for people to stop and take a picture with? Or is it just some piece of art? There's a piece of art that's drawing people's attention to it as they walk through the service tunnel. And the focus, Your Honor, is on the defendant. The focus in summary judgment assessing whether a defendant owed a duty should not be on what the plaintiff did or should have done. Rather, the focus should be on what the defendant did or should have done. And this was expressly noted by this honorable court in Barrett v. FAA Group LLC, where the defendants made a suggestion, and this is kind of in rebuttal to the point that defendants counsel made, that Ms. Farrow did not have to stop and take a picture. So in Barrett v. FAA Group, the defendant's suggestion that the plaintiff should have used a sidewalk instead of walking across a parking lot was irrelevant when assessing the scope of the defendant's duty. There the court said, this court said, We are not asked to determine what a plaintiff should or should not have done at this stage of the proceedings. The purpose of summary judgment is not to try an issue of fact, but determine whether a tribal issue of fact exists. And here we have the very same thing. What's perceivable to the defendants is people in their service tunnel, whether they're exercising care for their own safety, focusing on the tasks that they're directed by the defendants to perform, or having a conversation with other patrons, something that's perceivable, perceivable distractions. It's for the jury to determine the weight and credibility to be assigned to Ms. Farrow's testimony, Ms. McCauley's testimony, our plaintiff's expert, Scott Leopold's testimony, regarding the hindsight bias and examining the conspicuity of the mural leg. Hindsight bias. Hindsight bias. Is that an argument that you advance in your briefs? It is. It is, Your Honor. We advance that in the briefs, and that's the issue. Are you aware of any cases that rely on that type of bias? On that specific hindsight bias, no, but it goes to corroborate the plaintiff's testimony that the mural leg was not readily apparent to a pedestrian exercising care. That goes to what I was asking you earlier, that this was almost sort of rote, walking down that service tunnel, and when they introduced this new element into it, it put someone like a her at greater risk because you wouldn't necessarily be paying attention to every nook and cranny in the tunnel. Is that your argument? It does go to that point, Your Honor. And it also goes to what the Supreme Court said in Ward, that looking at a condition, you cannot look at the condition just in and of itself. You have to view the condition in the circumstances in which it existed. And the circumstances in which it existed were the living, breathing, active service tunnel that the defendants should have foreseen a pedestrian or an invitee may be reasonably distracted. And Ms. Strato's testimony, Ms. Moncari's testimony, the video of the incident, Mr. Leopold's testimony, these were all discounted by the trial court when it made findings of fact to determine that the defendants did not owe a duty to Ms. Strato here, just like in Al-Qaeda, which the court found that the plaintiff's testimony and her expert's testimony corroborating that the dangerous condition was not readily apparent to an invitee exercising ordinary care for their own safety would be readily apparent to someone in the plaintiff's position. Those facts cannot be discounted. It's for the trier of facts to determine whether they believe those facts and to assign the weight and credibility to those disputed facts on the record. To sum up here in what we've been discussing, where divergent inferences can be drawn, summary judgment is improper. The trial court's ruling made several findings of fact and usurped the province of the jury. The defendant's case is not clear and free from doubt, and this honorable court should reverse the trial court so these disputed facts can be reconciled by the finder of facts. Simply attempting to dispose of litigation merely by invoking relative terms such as known and obvious, as the defendants are trying to do here, is inappropriate, and we ask that this honorable court reverses the trial court's ruling. Okay, thank you. I want to thank both of our counsel for excellent argument, excellent review, and giving us a lot to think about. That will be taken under advisement. With that, we're adjourned.